IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CHARLOTTE COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-2305-CM |
| | ) | |
| GENERAL MOTORS LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Pro se plaintiff Charlotte Coleman filed this action alleging that she was subjected to a hostile work environment and retaliation by defendant General Motors LLC ("GM"). Plaintiff also alleges the following claims against fellow GM employees: assault and defamation against Joan Thomas, defamation against Richard Cheers, and intentional infliction of emotional distress against Christoffer Listenbee. The following parties have filed motions for summary judgment: plaintiff (Docs. 100, 105); defendant GM (Doc. 103); defendant Thomas (Docs. 101, 112); and defendant Listenbee (Doc. 114).

Plaintiff has asked for additional time to respond to GM, Thomas, and Listenbee's reply briefing (Doc. 128). Neither Thomas nor Listenbee filed a reply to their summary judgment motions, and plaintiff filed timely responses thereto, so plaintiff's request for additional briefing makes no sense. With respect to GM, who did file a reply brief, the court may grant leave to file a sur-reply in extraordinary circumstances upon a showing of good cause. *Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-2381-JWL-GLR, 2011 WL 6934112, at *1 (D. Kan. Dec. 30, 2011). Plaintiff has made no such showing. For these reasons, the court denies plaintiff's Motion Requesting Time (Doc. 128).

The court notes that, in all of the summary judgment briefing, plaintiff failed to follow Federal Rule of Civil Procedure 56 and District of Kansas Local Rule 56.1. In both moving for summary

-1-

judgment and responding to defendants' motions for summary judgment, plaintiff failed to cite to any portion of the record.  Moreover, plaintiff failed to put forth a single affidavit or declaration, and the court notes that plaintiff's complaints (Docs. 1, 9) are not verified or otherwise sworn.  However, because of plaintiff's status as a pro se litigant, the court will construe plaintiff's summary judgment motions and responses more liberally than it might construe a response filed by a licensed attorney. *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991) (citing *Overton v. United States*, 925 F.2d 1282 (10th Cir. 1990) for the proposition that liberal construal of pro se pleadings includes review of summary judgment briefs).

Regarding defendants' motions for summary judgment, the court will deem admitted those facts to which plaintiff wholly failed to respond or otherwise controvert.  Moreover, to the extent plaintiff has labeled defendants' factual assertions as contested, but where she failed to specifically controvert those assertions, the court deems those facts admitted as well.  D. Kan. Rule 56.1(a) ("All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.").  With respect to plaintiff's own motions for summary judgment, most, if not all, of plaintiff's asserted facts are either unsupported by the record, constitute inadmissible hearsay, or are otherwise immaterial, rendering them inapplicable here.  *Gilkey v. Prot. One Alarm Monitoring, Inc.*, No. 12-1150-EFM, 2013 WL 1309027, at *1 (D. Kan. Mar. 29, 2013), *aff'd*, 517 F. App'x 627 (10th Cir. 2013).  With this framework in mind, the court turns to the motions at hand.

## I.    Background

Plaintiff, an African-American female, began working for defendant GM in September 1986 and transferred to GM's Fairfax Assembly plant in Kansas City, Kansas, in January 2010.  From January 2011 to November 2012, plaintiff worked during GM's second shift.  In June 2011, plaintiff

reported to GM's security department that her car windshield had been damaged while her car was parked in an employee parking lot. According to the GM Global Security Incident Report created contemporaneously with plaintiff's report, plaintiff suspected James Bryant or Lisa Harrison (not defendants here) of the vandalism. (Doc. 104-4.)

Plaintiff claims she was subjected to harassment in 2011 by fellow employees, who are described below.

**A.  Joan Thomas**

Joan Thomas, an African-American female, was an hourly co-worker. Plaintiff contends that Thomas called plaintiff names on November 8, 2011, such as "crazy motherfucker," "trouble maker," and "black monkey." (Doc. 116 at 4.) Also in November 2011, plaintiff alleges that she had an altercation with Thomas. Plaintiff contends that Thomas struck plaintiff's right knee with a mallet and pushed her against an automobile on the assembly line. Plaintiff reported Thomas's alleged physical contact to GM Labor Relations Department representative Ca-Sandra Tutt, an African-American female, but plaintiff did not report any alleged use of offensive language. (Doc. 104-1 ¶¶ 6, 9.) Ms. Tutt investigated the matter by interviewing plaintiff, Thomas, and witnesses who were present. Thomas denied striking or pushing plaintiff, and no witnesses corroborated that an altercation occurred. (*Id.* ¶ 7.) Notwithstanding, GM offered plaintiff a transfer to another job, department, or shift, but plaintiff declined.

Plaintiff also contends that on December 12, 2011, Thomas "made threaten to me" and "stated for me to come outside; so she could kick mine a**using other offensive words." (Doc. 116 at 5.) Plaintiff does not set forth the "other offensive words," and GM has no record of plaintiff making a report about this incident.

**B.  Richard Cheers**

Richard Cheers, an African-American male, was also an hourly co-worker.  Plaintiff alleges that Cheers told co-workers that she was "gay" and had a venereal disease and that he would come into her work area to harass her.  Plaintiff provides no specifics regarding Cheers's alleged harassing conduct, such as when it occurred or what he said.  Plaintiff did not report Cheers's purported harassing behavior to GM.

### C.  Christopher Listenbee

Christopher Listenbee, an African-American male, was another hourly co-worker plaintiff claims harassed her.  Specifically, plaintiff alleges that Listenbee spread gossip about her and that he requested other (unnamed) male co-workers to grab their genital area in front of plaintiff.  Plaintiff states that "[t]his was reported to the 3 GM/EAP reps," (Doc. 106 at 4), but GM has no record of plaintiff making any complaint regarding Listenbee.

### D.  Christopher Andrews

Plaintiff alleges that Christopher Andrews(not a named defendant here), an African-American male, spread gossip about her and would come into her work area to "intimidate" her by standing in an open space while watching television and making "indecent" poses.  (Doc. 104-1 ¶ 13.)  Plaintiff reported these "poses," and GM assigned Ms. Tutt to investigate the allegations.  Ms. Tutt interviewed plaintiff, Andrews, and plaintiff's supervisor.  (*Id.* ¶ 14.)  During the investigation, plaintiff described Andrews as "swinging his arms and legs (stretching) and standing with his hands on his hips or behind his back and star[ing] at [the] TV."  (*Id.*)  In response to plaintiff's complaint, Ms. Tutt watched Andrews and observed that, after completing his work assignment, he "would stand in the identified open space and watch TV until his next job" and would "swing his arms back and forth and pick up his feet in a stretching motion."  (*Id.* ¶ 15.)  Ms. Tutt concluded that plaintiff's complaint lacked merit and that Andrews's conduct did not violate GM's anti-discrimination or anti-harassment policies.  (*Id.*)

## II.   Discrimination (GM)

Summary judgment is appropriate when there are no genuine disputes as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A movant that does not have the burden of persuasion at trial has the initial summary judgment burden of "pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).  If the movant makes this showing, the burden shifts to the nonmovant to set forth facts from which a rationale trier of fact could find for the nonmovant. *Id.*

In this case, plaintiff does not have direct evidence of discrimination, so the court analyzes her claims under the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Under this framework, plaintiff has the initial burden of establishing a prima facie case of discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981).

### A.   Hostile Work Environment

To establish a prima facie case of hostile work environment, a plaintiff must show that the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and that the harassment stemmed from discriminatory animus. *Bloomer v. United Parcel Serv., Inc.*, 94 F. App'x. 820, 825 (10th Cir. 2004).

#### 1.   Racial and Sexual Harassment

Plaintiff alleges she was subjected to a hostile work environment due to her race and gender. "Title VII does not establish a general civility code for the workplace.  Accordingly, the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim." *Morris v. City of Colo. Springs*, 666 F.3d 654, 663–64 (10th Cir. 2012) (internal quotes and citations omitted).  For a hostile work environment claim

to be actionable, plaintiff must show that her workplace was "'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'"  *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012) (quoting *Morris*, 666 F.3d at 664).  Plaintiff must prove both objectively and subjectively that her work environment was hostile or abusive.  *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998).

Plaintiff cannot establish a prima facie case of hostile work environment because the incidents about which she complains were not pervasive or severe, nor is there any evidence that these incidents (if they occurred) were motivated by plaintiff's race or gender.  For example, plaintiff claims that her personal vehicle's windshield was damaged, yet she could not identify the individuals who purportedly damaged her vehicle,[1] nor could plaintiff articulate a reason as to why anyone may have done so.  Moreover, nothing about the nature or circumstances of the alleged vandalism suggests it was motivated by race or gender.

Regarding Joan Thomas, even if Thomas did direct slurs toward plaintiff in November 2011, this cannot by itself form the basis for a harassment claim, even if one of the slurs included a racial component.[2]  *See, e.g.*, *Cook v. Applebee's Int'l, Inc.*, No. 90-2090-V, 1992 WL 135023, at *4 (D. Kan. May 22, 1992) (a plaintiff's claim that he was subjected to a co-worker's one-time use of a racial epithet was not enough to show that he was the victim of a racially hostile work environment); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) ("[M]ere utterance of an epithet which engenders offensive feelings in an employee, does not sufficiently affect the conditions of employment to implicate Title VII.").  Plaintiff makes no effort to plead or argue that the purported behavior of

---

[1] As previously noted, plaintiff did not suspect or allege that any of the named defendants vandalized her vehicle.
[2] Only one of the slurs, "black monkey," could be considered racial, and none of the slurs had anything to do with plaintiff's sex.

Thomas was in fact motivated by plaintiff's race or sex, as opposed to some personal animus between the two employees.

Even when the court considers the altercation between Thomas and plaintiff (that was never corroborated by witnesses or verified after an investigation), plaintiff still has failed to establish a prima facie case.  There is no evidence or even suggestion that the mallet altercation was racially or sexually motivated, and even if it were, the court would find that plaintiff's work environment was not objectively hostile.  *Dunegan v. City of Council Grove, Kan. Water Dep't*, 77 F. Supp. 2d 1192, 1198 (D. Kan. 1999) (holding that two separate incidents of sexual harassment were insufficient to establish an objectively hostile work environment based on pervasiveness).  The court's finding is supported by the fact that Thomas, like plaintiff, is an African-American female.  *See PAS Commc'ns, Inc. v. Sprint Corp.*, 139 F. Supp. 2d 1149, 1169 (D. Kan. 2001) (stating that ability to show racial animus is undermined when alleged harasser is a member of the protected class).  Plaintiff has not made a prima facie showing that Thomas subjected her to a racially or sexually hostile work environment.

With respect to Richard Cheers, Christopher Listenbee, and Christopher Andrews (all African-Americans), plaintiff has wholly failed to substantiate that they spread rumors about her.  Even if plaintiff had come forward with some sort of admissible evidence about these rumors, this workplace gossip lacks a race or gender component.  Plaintiff's bare allegations are insufficient to survive summary judgment.  *Kirk v. City of Tulsa, Okla.*, 72 F. App'x 747, 751–52 (10th Cir. 2003) (holding that plaintiff's claims of workplace gossip were not severe or pervasive enough to support a hostile environment claim).

Plaintiff also has failed to put forth any evidence that Cheers would come into her work area to harass her—plaintiff provides no details as to what he said that was harassing and when these alleged harassing encounters occurred.  Plaintiff also contends Listenbee told male and female co-workers to

grab their genitals in plaintiff's presence, yet she provides no evidence for such a claim, nor does she explain how this was motivated by her race or gender.

The only remaining incident involves plaintiff's claim that Andrews would engage in swinging-type motions while watching television between his shifts. As GM points out, even plaintiff's own recounting of Andrews's purported behavior suggests that Andrews was merely stretching or exercising while watching a communal television between work projects. Moreover, after plaintiff reported the incident, GM investigated the matter by conducting interviews and observing Andrews. GM concluded that Andrews's stretching motions were not discriminatory or harassing, and the court finds nothing unreasonable about GM's conclusion.

The incidents that plaintiff contends created a hostile work environment are either unsupported by any evidence in the record or have no racial or gender component at all, and collectively the alleged incidents do not rise to the level of being pervasive or severe. Accordingly, plaintiff cannot establish a prima facie case of race or gender discrimination.

### 2.  GM's Knowledge

Even if plaintiff could establish a prima facie case of hostile work environment, the court finds that GM took appropriate measures. To establish an employer's liability, a plaintiff must show that her employer "'had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment.'" *Ford v. West*, 222 F.3d 767, 776 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 673). A plaintiff demonstrates actual employer knowledge where the plaintiff has reported harassment to management-level employees. *Id.* (citing *Adler*, 144 F.3d at 673). The court then considers whether the employer's remedial or preventative response was reasonably calculated to end the discrimination. *Adler*, 144 F.3d at 673. Plaintiff bears the burden of presenting

evidence establishing that the employer's response was unreasonable.  *Wilson v. Tulsa Junior Coll.*, 164 F.3d 534, 541 n.4 (10th Cir. 1998).

The only evidence in the record of plaintiff reporting any incidents to GM is the car vandalism, the mallet altercation with Thomas, and Andrews's television-watching poses.[3]  Regarding the vandalism of plaintiff's car, GM investigated the matter and could not determine the perpetrator. Indeed, plaintiff at the time also could not positively name who vandalized her vehicle.  The court believes that GM's investigation of the incident was reasonable, especially given that the vandalism had no racial or sexual element.

GM also appropriately investigated the mallet altercation with Thomas.  Ms. Tutt interviewed plaintiff, Thomas, and the witnesses who were reportedly present during the alleged altercation. Thomas denied striking or pushing plaintiff, and no witnesses corroborated plaintiff's report. Moreover, given that Thomas is an African-American female like plaintiff, it would be reasonable for GM to believe the alleged altercation was not racially or sexually motivated.  GM offered plaintiff a transfer, which plaintiff denied.  GM's remedial measures were adequate.

Similarly, GM investigated plaintiff's report regarding Andrews by conducting interviews and observing Andrews's behavior.  GM concluded that Andrews was merely stretching while he was watching television between shifts, a finding which the court believes was reasonable given the circumstances.  GM promptly and adequately responded to plaintiff's reports of harassment.

With respect to the remaining claims of alleged harassment that plaintiff did not report, the court turns to whether GM had constructive knowledge.  An employer may be deemed to have

---

[3] The court notes that plaintiff's assorted contentions of reporting other "harassing" incidents to GM carry little weight. Foremost, plaintiff is inconsistent in her own pleadings as to what, when, and to whom she made various reports.  More importantly, plaintiff's complaint and amended complaint were not verified, and her statements in moving for and responding to summary judgment are neither sworn nor declared under penalty of perjury,  In contrast, GM provided the sworn affidavit of Ca-Sandra Tutt, where Ms. Tutt makes sworn statements as to what incidents were, and were not, reported by plaintiff to GM.

constructive knowledge of harassment where the pervasiveness of the harassment supports an inference of employer knowledge. *Ford*, 222 F.3d at 776 (citing *Adler*, 144 F.3d at 673). Only when the acts of harassment are "'so egregious, numerous, and concentrated as to add up to a campaign of harassment'" will the employer be liable for failure to discover the harassment. *Adler*, 144 F.3d at 675 (quoting *Baker v. Weyerhaeuser Co.*, 903 F.2d 1342, 1346 (10th Cir. 1990)). In this case, the alleged incidents did not add up to a "campaign of harassment" because they were neither pervasive nor severe. Accordingly, the court finds that GM did not have constructive knowledge of any alleged harassment that plaintiff did not report. For these reasons, the court finds that GM is entitled to summary judgment on plaintiff's hostile work environment claim.

### 3. Retaliation

GM contends that it is entitled to summary judgment on plaintiff's retaliation claim because plaintiff failed to exhaust her administrative remedies. Notably, while plaintiff's amended complaint includes a claim for retaliation (Doc. 9), the Pretrial Order does not (Doc. 116). In any event, even if plaintiff still intends to pursue a retaliation claim, GM is entitled to judgment as a matter of law.

Plaintiff filed her Charge of Discrimination ("Charge") on February 9, 2012. (Doc. 104-3 at 1–4.) In her Charge, plaintiff did not indicate a claim of retaliation—plaintiff neither checked the retaliation box nor provided allegations in the narrative portion that amount to a retaliation claim. Plaintiff's failure to assert a claim of retaliation in her Charge precludes the court from hearing her retaliation claim. *See Rader v. U.S.D. 259 Wichita Pub. Sch.*, 844 F. Supp. 2d 1206, 1210–11 (10th Cir. 2011) (holding failure to exhaust remedies for retaliation where plaintiff marked box for racial discrimination, but not boxes for retaliation and disability discrimination, and narrative portion of administrative complaint contained no suggestion of retaliation) (internal citation omitted); *see also Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007) (filing of a Charge is a jurisdictional

prerequisite to pursuing a Title VII claim).  GM is entitled to summary judgment on plaintiff's

retaliation claim.

## III.    Intentional Infliction of Emotional Distress (Listenbee)

Plaintiff has asserted a claim against Listenbee for intentional infliction of emotional distress.

Plaintiff's claim is based upon the aforementioned conduct—that Listenbee asked other employees to

grab their genitalia in front of plaintiff.  (Doc. 116 at 5, 9.)  Listenbee has moved for summary

judgment on plaintiff's claim against him (Doc. 115).

Plaintiff must prove four elements to establish a cause of action for intentional infliction of

emotional distress: (1) the conduct of defendant must be intentional or in reckless disregard of

plaintiff; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection

between defendant's conduct and plaintiff's mental distress; and (4) plaintiff's mental distress must be

extreme and severe.  *Taiwo v. Vu*, 822 P.2d 1024, 1029 (Kan. 1991).  The tort of intentional infliction

of emotional distress is not a favored cause of action under Kansas law.  *E.E.O.C. v. Gen. Motors

Corp.*, 713 F. Supp. 1394, 1396–97 (D. Kan. 1989).  In particular, Kansas courts are reluctant to extend

this cause of action to employment discrimination claims, including claims of sexual harassment.  *See,

e.g.*, *Freeman v. Kan. State Network, Inc.*, 719 F. Supp. 995, 1000 (D. Kan. 1989); *Haehn v. City of

Hoisington*, 702 F. Supp. 1526, 1530 (D. Kan. 1988); *Polson v. Davis*, 635 F. Supp. 1130, 1150–51 (D.

Kan. 1986); *Fletcher v. Wesley Med. Ctr.*, 585 F. Supp. 1260, 1262 (D. Kan. 1984); *Elliott v.

Employers Reinsurance Corp.*, 534 F. Supp. 690, 691 (D. Kan. 1982); *but see Gomez v. Hug*, 645 P.2d

916, 922 (Kan. Ct. App. 1982) (holding intentional infliction of emotional distress claim could go to a

jury where employer subjected employee to vulgar epithets, racial intimidation, and threats of

violence).

The court looks to the specific conduct of Listenbee that plaintiff claims was outrageous: that Listenbee told another employee (Dewayne Hawkins) "to perform an act of sexual harassment toward [plaintiff]" which, according to plaintiff, that employee did not do, and that Listenbee requested other male co-workers to grab their genitalia in plaintiff's presence. (Doc. 118 at 1–2). Even if these allegations are true, which Listenbee denies, such conduct does not rise to the level of being extreme or outrageous. Indeed, plaintiff makes no allegation that Listenbee himself grabbed his genitalia in plaintiff's presence or otherwise performed any act of sexual harassment towards plaintiff. Rather, the only allegation is that Listenbee, who is not plaintiff's supervisor, suggested to other employees that they take part in this conduct. Suggesting to other employees to engage in inappropriate conduct falls far short of being outrageous. *Taiwo*, 822 P.2d at 1030 (holding that liability for intentional infliction of emotional distress requires more than "mere insults, indignities, threats, annoyances, petty expressions, or other trivialities"). Listenbee is entitled to summary judgment on plaintiff's claim of intentional infliction of emotional distress.

## IV.    Defamation and Assault (Thomas)

Plaintiff has asserted claims of defamation and assault against defendant Thomas. Thomas has moved for summary judgment on these claims (Docs. 101, 112). The court addresses each claim in turn.

### A.  Defamation

In order for plaintiff to survive summary judgment on her defamation claim, she must establish the following elements:  (1) false and defamatory words; (2) communication to a third party; and (3) resulting harm to the reputation of the person defamed. *Hunter v. The Buckle, Inc.*, 488 F. Supp. 2d 1157, 1178 (D. Kan. 2007) (citing *Hall v. Kan. Farm Bureau*, 50 P.3d 495, 504 (Kan. 2002)). In Kansas, "damage to one's reputation is the essence and gravamen of an action for defamation." *Gobin*

*v. Globe Publ'g Co.*, 649 P.2d 1239, 1243 (Kan. 1982).  "Unless injury to reputation is shown, plaintiff has not established a valid claim for defamation, by either libel or slander, under [Kansas] law.  It is reputation which is defamed, reputation which is injured, reputation which is protected by the laws of libel and slander."  *Bosley v. Home Box Office, Inc.*, 59 F. Supp. 2d 1147, 1150 (D. Kan. 1999) (citing *Gobin*, 649 P.2d at 1243).

Plaintiff has presented no evidence that her reputation was damaged by Thomas's alleged remarks and name-calling, and the court can find none in the record.  The only allegation that could be construed as alleging that plaintiff's reputation was damaged is contained in the Pretrial Order: "[A]s a result of [Thomas's] comments and friendship with Cassandra Tutt, (a General Motors labor relations specialist) I was threatened to be removed from my job."  (Doc. 116 at 4.)  While the court does not determine whether this allegation actually pertains to plaintiff's reputation (which the court believes it likely does not), the court finds that, in any event, the evidence in the record establishes that plaintiff's job was not threatened at all.  Plaintiff offers no evidence that she was threatened to be removed from her job, and Ms. Tutt's sworn affidavit contradicts this allegation.  In fact, in response to the alleged altercation between plaintiff and Thomas, Ms. Tutt did not threaten plaintiff's job but instead offered plaintiff a transfer to another job, department, or shift, which plaintiff declined.  (Doc. 104-1 ¶ 8.)  Additionally, plaintiff made no reports about Thomas's alleged demeaning or offensive language, and Ms. Tutt has testified that she had no independent knowledge of these comments, thereby contradicting any notion that Ms. Tutt heard these purported statements at all.  The court holds that plaintiff has failed to establish a prima facie case of defamation.

**B.  Assault and Battery[4]**

---

[4] While plaintiff's amended complaint (Doc. 9) appears to contain an allegation of battery, plaintiff does not include a battery claim against Thomas in the Pretrial Order.  Rather, plaintiff includes only a claim for assault.  (Doc. 116 at 8.) Notwithstanding, the court will consider both claims herein.

To prove assault, plaintiff must show an intentional threat or attempt, coupled with apparent ability, to do bodily harm to another, resulting in immediate apprehension of bodily harm. *Stapp v. Overnite Transp. Co.*, 995 F. Supp. 1207, 1216 (D. Kan. 1998). No bodily contact is necessary, but words do not make the actor liable for assault unless together with other acts or circumstances they put another person in reasonable apprehension of imminent harmful or offensive contact with his person. *Id.* (citing *Taiwo*, 822 P.2d at 1031). "To prove battery, plaintiff must show an unprivileged touching or striking, done with the intent of bringing about either a contact or an apprehension of a contact that is harmful or offensive." *Id.* (citing *Daniels v. Dillard Dept. Stores, Inc.*, 881 F. Supp. 505, 510–11 (D. Kan. 1995)).

In the instant case, there is no evidence, other than plaintiff's own unsworn statements, that Thomas ever assaulted plaintiff. GM conducted an investigation of the mallet incident and could not substantiate that it ever happened. (Doc. 104-1 ¶ 7.) The evidence in the record is contrary to plaintiff's unsworn and inadmissible statements that Thomas verbally assaulted or struck plaintiff in November 2011. Similarly, there is no evidence in the record that Thomas threatened plaintiff in December 2011 "to come outside." Plaintiff could have, but did not, make a report to GM, and Thomas denies making any threats. In the absence of other evidence, plaintiff's unsworn allegations do not meet the evidentiary requirements of Rule 56. *Simpson v. Jones*, 316 F. App'x 807, 811–12 (10th Cir. 2009). Plaintiff has failed to create a genuine factual dispute for summary judgment purposes. *Id.* (citing *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006)). The court grants Thomas's motion for summary judgment.

**V.     Defamation (Richard Cheers)**

Plaintiff asserts a claim of defamation against Richard Cheers. Cheers did not file a motion for summary judgment, however.[5] Moreover, while plaintiff filed two motions for summary judgment, it is unclear whether plaintiff sought judgment against Cheers.[6] Indeed, plaintiff has requested additional time to submit a summary judgment motion separately against Cheers (Doc. 127), which the court denies as untimely.[7] D. Kan. Rule 6 (motion for an extension of time must be filed before the specified time expires). Even if plaintiff did intend to include Cheers in her motions, plaintiff only alleges, without any supporting evidence or citation to the record, that Cheers spread rumors that she had herpes and was gay. (Doc. 100 at 2; Doc. 105 at 2.) The court will not grant summary judgment based upon these unsworn allegations. The court denies plaintiff's motions to the extent she seeks summary judgment against Cheers.

## VI.   Conclusion

For the reasons stated above, the court grants summary judgment to GM, Joan Thomas, and Christopher Listenbee. The defamation claim against Cheers is the only remaining claim in this case.

**IT IS THEREFORE ORDERED** that plaintiff's Motion for Extension (Doc. 127) and plaintiff's Motion Requesting Time (Doc. 128) are denied.

**IT IS FURTHER ORDERED** that plaintiff's Motions for Summary Judgment (Docs. 100, 105) are denied.

**IT IS FURTHER ORDERED** that GM's Motion for Summary Judgment (Doc. 103) is granted; Thomas's Motions for Summary Judgment (Docs. 101, 112) are granted; and Listenbee's Motion for Summary Judgment (Doc. 114) is granted.

---

[5] It is apparent from the Pretrial Order that Richard Cheers appeared pro se at the pretrial conference. (Doc. 116 at 1.)
[6] Plaintiff asked for the following relief in her motions: "Summary judgment should be granted on allegations that General Motors and et.al., violated the plaintiffs [sic] civil rights by failing to provide a work environment free of harassment and violence." (Doc. 100 at 1); "Summary judgment should be granted on allegations that General Motors et.al. violated the plaintiff's civil rights by failing to provide a work environment free of harassment and violence." (Doc. 105 at 1.) Plaintiff does not assert a civil rights claim against Cheers.
[7] The Pretrial Order set February 4, 2014 as the deadline to file dispositive motions. (Doc. 116 at 13.)

**IT IS SO ORDERED.**

Dated this 20th day of June 2014, at Kansas City, Kansas.

s/Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**